IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID EADES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:07-cv-00913 |
| ) | Judge Trauger |
| BROOKDALE SENIOR LIVING, INC. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the court is the Motion for Summary Judgment of Defendant Brookdale Senior Living, Inc. (Docket No. 17), to which the plaintiff has responded (Docket No. 21), and the defendant has replied (Docket No. 25). For the reasons discussed herein, the defendant's motion will be granted.

## BACKGROUND

The plaintiff, David Eades, was employed by the defendant, Brookdale Senior Living, Inc. ("Brookdale"), or by Brookdale's corporate predecessor, American Retirement Corporation, from July 2005 until his termination in late 2006.[1] Mr. Eades was forty-one years of age at the time he was hired and forty-two when he was terminated. Greg Richard and Lee Ann Fein were the individuals responsible for hiring Mr. Eades. Mr. Richard and Ms. Fein are currently fifty-

---

[1] Unless otherwise noted, the facts are drawn from Plaintiff David Eades' Response to the Statement of Undisputed Material Facts of Defendant Brookdale Senior Living, Inc. (Docket No. 22.)

1

four years old and forty-nine years old, respectively.  Within a few months of being hired, Mr. Eades began reporting to Andy Gruen.

In July 2006, shortly after Brookdale acquired American Retirement Corporation, Mr. Gruen approached Mr. Eades about moving from the position of Regional Director of Operations to the position of Regional Director of Start-Up Operations.[2]  On August 1, 2006, Mr. Eades moved to the position of Regional Director of Start-Up Operations.  Zach Zerbonia, who is currently twenty-nine years old, also served as a Regional Director of Start-Up Operations.  According to Mr. Eades, there were many challenges associated with this new position stemming primarily from the "non-existence of defined job duties" and "poor leadership from management."  (Docket No. 21 at 2.)

For approximately the first thirty to forty-five days in his new position as Regional Director of Start-Up Operations, Mr. Eades reported to Ms. Fein, as did Mr. Zerbonia.[3]  It is undisputed that Ms. Fein has a management style that has been described as "direct," that she has little patience for those who are unprepared, and that she holds those who report to her to high standards.  During the time that he reported to Ms. Fein, Mr. Eades had a number of interactions with her that form part of the basis of his claims.  First, Mr. Eades alleges that Ms. Fein suggested that Mr. Zerbonia "mentor" him, despite the fact that Mr. Zerbonia was significantly

---

[2] The defendant alleges that Mr. Eades was "struggling" in the position of Regional Director of Operations, a fact that Mr. Eades disputes.  (Docket No. 22 ¶ 21.)  According to Mr. Eades, he was never informed that the move to the position of Regional Director of Start-Up Operations had anything to do with his performance in his previous position.  (Docket No. 23 Ex. 1 at 61-62.)  However, he does not dispute that Mr. Gruen and Ms. Fein believed that he was "better suited" for the position of Regional Director of Start-Up Operations "because it was more rote and involved completing items on a checklist."  (Docket No. 22 ¶ 22.)

[3] Thereafter, Mr. Eades and Mr. Zerbonia reported to Jack Carney.

2

younger and less experienced in the field than Mr. Eades. (Docket No. 23 Ex. 1 at 114-15; Docket No. 21 at 4.) Mr. Eades also alleges that, as a general matter, Ms. Fein yelled at Mr. Zerbonia less than she yelled at him.

Specifically, Mr. Eades cites one instance in which he was riding in a car with Ms. Fein, and he stated that he wished that Brookdale did not use Verizon as its cell-phone carrier. Ms. Fein replied, in a "loud and negative manner, that she thought Verizon was just fine." Additionally, Mr. Eades alleges that, during a meeting, Ms. Fein asked Mr. Eades if he was following up on a particular issue. When Mr. Eades stated that he was doing so almost daily, Ms. Fein responded that she "found that hard to believe." Mr. Eades also asserts that Ms. Fein once asked him to get her luggage out of the trunk of their shared rental car, although he does not dispute that Ms. Fein believed that he was going to the car anyway. He also asserts that, while discussing airport security, Ms. Fein once accused him of misquoting something he had heard on television. Ms. Fein apologized for this incident the following day. Finally, Mr. Eades claims that, during a phone call, Ms. Fein once raised her voice and asked why Mr. Eades hadn't ordered a certain piece of equipment and then hung up on Mr. Eades.

After this phone call incident, Mr. Eades complained to Brookdale's human rights department about Ms. Fein's conduct and was advised to contact Terry Frisby, Brookdale's human resources compliance officer. At some point thereafter, Mr. Eades met with Ms. Fein and Mr. Carney to discuss his job responsibilities. During that conversation, Ms. Fein addressed the ordering of equipment and explained why she was upset with Mr. Eades during the phone call. At the end of the meeting, Ms. Fein stated that she was committed to Mr. Eades' remaining part

3

of the regional "team," and Mr. Eades himself acknowledged that he viewed the meeting as helpful.

Subsequent to his meeting with Ms. Fein and Mr. Carney, Mr. Eades spoke with Mr. Frisby, who advised Mr. Eades that he had a right to request an investigation or to have a formal hearing with respect to his complaints about Ms. Fein's conduct. Then, on October 2, 2006, Mr. Eades met with Mr. Richard, who was then Brookdale's Chief Operating Officer and Ms. Fein's supervisor. During this meeting, Mr. Eades informed Mr. Richard that Ms. Fein was "being very hard on him" and "singling him out." Mr. Richard recommended that Mr. Eades put his complaints about Ms. Fein in writing and meet with Ms. Fein to discuss those issues. After this meeting, Mr. Richard informed Ms. Fein that Mr. Eades was "struggling performance-wise" and directed her to develop a "plan of action that would define what success was for [Mr. Eades]."

On October 9, 2006, Mr. Eades met with Ms. Fein, Mr. Carney, and a human resources representative. During that meeting, the parties addressed both Mr. Eades' job performance and his complaints about Ms. Fein's conduct. With respect to Mr. Eades' job performance, Ms. Fein and Mr. Carney gave Mr. Eades feedback on his performance and discussed placing Mr. Eades on an "action plan" that would set forth Brookdale's expectations and areas in which Mr. Eades' performance was falling short. According to Mr. Eades, this meeting marked the first time he was advised there were problems with his job performance. (Docket No. 23 Ex. 1 at 106-09.)

Following this meeting, Mr. Eades sent Mr. Richard an email stating that, at the meeting, he was "told [he was] on an action plan due to serious concerns [Ms. Fein] had with [his] job performance." Mr. Eades' email additionally stated that he was "seriously considering filing formal complaints of harassment and retaliation against [Ms. Fein]." In response, Mr. Richard

4

again asked Mr. Eades to commit his complaints about Ms. Fein to paper and to forward those complaints to Mr. Richard and Mr. Frisby, if indeed Mr. Eades wished to file a formal complaint against Ms. Fein.

On October 17 or 18, 2006, Mr. Eades was on a conference call with Ms. Fein, and Ms. Fein called another individual to verify an assertion that Mr. Eades made. Subsequently, Mr. Eades composed a letter to W. E. Sheriff and Mark Shulte, Brookdale's two Chief Executive Officers, detailing his complaints about Ms. Fein's conduct. (*See* Docket No. 20 Ex. 10.) Specifically, the letter referenced Ms. Fein's request that Mr. Eades retrieve her luggage from their shared rental car; her comments "that degraded and insulted my personal non-work related opinions as unworthy and invalid"; her "lack of supervisory direction to me regarding a specific work-related issue for which I needed and requested her guidance, and then [her] disciplining of me because I did not solve the problem independently"; her statement that she found his reported attempts at follow-up "very hard to believe"; her statement that he was moved to the position of Regional Director of Start-Up Operations because he did not have the skill set for his previous position, though he had not been informed previously that she believed he lacked this skill set; and her placing him in a role "so I could be coached by a twenty-seven year old new employee with half my experience." (*Id.*) With respect to his age, Mr. Eades' letter also stated that he was over forty years of age and that he believed that his age was the basis for Ms. Fein's conduct.[4] (*Id.*) Mr. Eades sent this letter by email to Mr. Sheriff, Mr. Shulte, Mr. Richard, and Mr. Frisby.

---

[4] In the letter, Mr. Eades also asserted his sexual orientation as a basis for Ms. Fein's behavior, although he does not make that claim in the context of this litigation.

5

Case 3:07-cv-00913   Document 26   Filed 11/25/08   Page 5 of 15 PageID #: 477

The following day, Mr. Eades met with Mr. Richard and Mr. Frisby. During that meeting, Mr. Richard stated that he thought Mr. Eades and Ms. Fein would have difficulty working together in the future, and Mr. Eades agreed. Mr. Richard also asserted that Mr. Eades stated that he "could not work in the innovative senior care structure," although Mr. Eades disputes this fact. Mr. Richard suggested that there might be other positions available for Mr. Eades at Brookdale and also asked whether Mr. Eades would be interested in a severance package, indicating that Mr. Eades might be offered a six-month severance package. Mr. Eades said he would consider a severance package and admitted that he "was pretty seriously leaning towards" accepting a six-month severance package at that time. Mr. Eades asked if he was being fired, and Mr. Richard and Mr. Frisby said that he was not.

At some point after this meeting, Mr. Gruen learned that a severance package was being prepared for Mr. Eades. Mr. Gruen was surprised that Mr. Eades was being offered a severance package because he was aware that, when Mr. Eades began working for American Retirement Corporation, Brookdale's corporate predecessor, Mr. Eades continued to accept severance payments from his previous employer, despite the fact that his severance agreement with that employer provided that he was not supposed to receive such payments if he became otherwise employed. Mr. Gruen provided this information to Mr. Frisby, who verified it and then passed it on to Mr. Richard.

Ultimately, Mr. Eades was offered a three-month severance package rather than a six-month severance package. According to the defendant, Mr. Eades was offered the lesser severance package because of Mr. Eades' conduct with respect to the severance package he had received from his previous employer. Mr. Eades declined the three-month severance package because he felt it "wasn't worth giving up what happened to [him]" and was terminated.

6

## ANALYSIS

The plaintiff has asserted claims of age discrimination and retaliation arising under the Age Discrimination Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964. The plaintiff also has asserted state law claims of age-based discrimination and retaliation arising under the Tennessee Human Rights Act ("THRA").

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir.

1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 431 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

## II.     Age Discrimination

Claims brought under the ADEA are analyzed according to the familiar *McDonnell Douglas* framework. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (applying *McDonnell Douglas* in ADEA case); *Johnston v. O'Neill*, 130 Fed. Appx. 1, 7 (6th Cir. 2005) (same). Under that framework, the plaintiff must establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff carries that burden, the defendant must present a legitimate, non-discriminatory reason for its actions. *Id.* at 802-03. If the defendant does so, the plaintiff must show that the reason proffered by the defendant is merely a pretext for discrimination. *Id.* at 804.

### A.     *Hostile work environment*

To state a *prima facie* case that he suffered a hostile work environment in violation of the ADEA, Mr. Eades must demonstrate that (1) he is forty years of age or older; (2) he was subject

8

Case 3:07-cv-00913   Document 26   Filed 11/25/08   Page 8 of 15 PageID #: 480

to harassment on the basis of age; (3) the harassment unreasonably interfered with his work performance and created an objectively intimidating, hostile, or offensive work environment; and (4) there is a basis for holding the employer liable.[5] *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834-35 (6th Cir. 1996). For harassment to be actionable, "it must be sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Id.* at 835 (citing *Meritor Sav. Bank v. Vinson*, 477 U.S. 47, 67 (1986)). The standard is both subjective and objective; not only must a plaintiff subjectively experience the environment as hostile, but it must be hostile in an objective sense as well. *See id.* The court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Mr. Eades acknowledges that he never heard anyone at Brookdale make a negative comment about his age (Docket No. 22 ¶ 94) and that his hostile work environment claim is based solely on the conduct of Ms. Fein (Docket No. 22 ¶ 19). Additionally, the parties agree on the six specific incidents on which Mr. Eades bases his claim: Ms. Fein's criticism of Mr. Eades' comment regarding Brookdale's cell-phone carrier, her questioning his follow-up, her request that he retrieve her luggage, her accusation that he misquoted something he heard on television, the phone call during which she criticized him for not ordering a piece of equipment and then hung up on him, and the conference call during which she asked another individual to verify an

---

[5]Claims of age discrimination under the THRA are analyzed according to the same standards of proof as are claims under the ADEA. *Brennan v. Tractor Supply Co.*, 237 Fed. Appx. 9, 15-16 (6th Cir. 2007). Therefore, the following analysis applies equally to the plaintiff's ADEA claims and to his THRA claims.

9

assertion he made.  In addition to these six specific incidents, Mr. Eades alleges that Ms. Fein's treatment of him differed from her treatment of Mr. Zerbonia, who held the same position as Mr. Eades but was thirteen years his junior.  Mr. Eades relies on Mr. Zerbonia's testimony that he recalled telling Mr. Eades, at the time they were both employed by Brookdale, that he believed Ms. Fein treated Mr. Eades differently.  (Docket No. 23 Ex. 3 at 24.)

    First, there is little evidence to suggest that Ms. Fein's treatment of Mr. Eades had anything whatsoever to do with his age.  None of her comments referenced his age even obliquely.  Further, despite Mr. Eades' insistence that Ms. Fein treated him differently, Mr. Eades testified, to the contrary, that Ms. Fein treated others in this same brusque manner.  (Docket No. 20 Ex. 1 at 56-57, 85-86.)  Additionally, even if Mr. Eades' assertion that he and Mr. Zerbonia were treated differently were to be credited, there is nothing to suggest that this was as a result of age discrimination on Ms. Fein's part, rather than just a reflection of the obvious personality conflict between the Ms. Fein and Mr. Eades, which does not establish a discriminatory animus.  *See Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 343 (6th Cir. 1998) ("[P]ersonal conflict does not equate with discriminatory animus.").  There is also evidence that Ms. Fein treated Mr. Zerbonia differently because she perceived him to be a better employee.  Mr. Eades himself allowed this possibility (Docket No. 25 Ex. 2 at 117), and Mr. Zerbonia likewise testified that, to the extent Ms. Fein treated Mr. Eades differently, it was because "I came to my encounters with Ms. Fein with my homework completed; he did not" (Docket No. 20 Ex. 5 at 45).  Finally, in addition to these factors, there is a strong contrary inference of any discriminatory intent on Ms. Fein's part in light of the fact that she was the person that hired Mr. Eades initially and that Mr. Eades was already over forty at the time he was hired.  *Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 801 (6th Cir. 2007) ("[W]here the

10

same person hires the employee and fires him within a short period of time, especially where the employee's class has not changed, there is a strong contrary inference of discriminatory intent.").

Moreover, the harassment about which Mr. Eades complains simply was not severe or pervasive. Ms. Fein may well have had a brusque demeanor and been inclined to fits of pique, but that alone does not create a hostile work environment. Mr. Eades argues that the six incidents occurred within a relatively short time frame and that some of the incidents occurred in the presence of others, increasing the humiliation he claims to have experienced as a result. The defendant notes, however, that only four of the six incidents occurred during the thirty to forty-five days during which Mr. Eades reported to Ms. Fein and that two occurred at other times over a fifteen-month period. (Docket No. 25 at 5-6.) Under any circumstances, these six incidents, spread over the course of some number of months, do not establish a hostile work environment, nor does the fact that some of those incidents occurred in the presence of others, especially where, as here, the incidents were not objectively humiliating and certainly did not involve any type of intimidation or physical threat. Given the totality of the circumstances, and viewing those circumstances objectively, Ms. Fein's conduct was neither severe nor pervasive such that it should have interfered with Mr. Eades' work performance.

Mr. Eades therefore has failed to establish a *prima facie* case of age discrimination, in that he has failed to demonstrate that the harassment he alleges was based on his age and that that harassment created an objectively intimidating, hostile, or offensive work environment. For these reasons, summary judgment will be granted for the defendant with respect to these claims.

*B.     Retaliation*

The defendant has conceded, for the purposes of summary judgment, that Mr. Eades has established a *prima facie* case of retaliation. (Docket No. 19 at 13.) It argues, instead, that it had a legitimate, non-discriminatory reason for terminating Mr. Eades' employment. (*Id.* at 13-16.)

Specifically, the defendant asserts that Mr. Eades' employment was terminated because Mr. Eades had performance issues and could no longer work with Ms. Fein and declined to accept the three-month severance package that he had been offered. (*Id.* at 14-15.) The defendant further notes that the only reason Mr. Eades was offered a three-month severance package instead of a six-month severance package was because Mr. Richard had discovered that Mr. Eades had wrongfully continued to accept severance payments from his previous employer after he found other employment. (*Id.*) Finally, the defendant places Mr. Eades' termination in the context of his ongoing job performance-related difficulties and his personality conflict with Ms. Fein, which he had complained about on several occasions. (*Id.* at 14; Docket No. 25 at 7.)

As the defendant has presented a legitimate, non-discriminatory reason for its actions, under the *McDonnell Douglas* framework, the burden shifts back to the plaintiff to demonstrate that this reason is, in fact, pretextual. 411 U.S. at 804. To establish pretext, the plaintiff must show that the proffered reason "(1) had no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008) (citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). In doing so, the plaintiff must "produce sufficient evidence from which the jury could reasonably reject the defendants' explanation and infer that the defendants did not honestly believe in the proffered nondiscriminatory reason for its adverse

12

employment action." *Id.* (citing *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001)).

Mr. Eades first asserts that pretext is established by the temporal proximity between his complaints about Ms. Fein and his termination. (Docket No. 21 at 13-14.) In support of this argument, he relies on *Mickey*, which discusses the significance of temporal proximity between a plaintiff's protected activity and subsequent adverse employment action. *See* 516 F.3d at 525. Although *Mickey* provides that such temporal proximity is relevant to the extent that it constitutes evidence of causation for the purposes of establishing a *prima facie* case of retaliation, it does not provide that temporal proximity is relevant to establishing pretext, as Mr. Eades asserts. *See id.*; *see also Ellis v. Buzzi Unicem USA*, No. 07-5660, 2008 U.S. App. LEXIS 13498, at *27-28 (6th Cir. June 24, 2008) (holding that temporal proximity arguments "do nothing to support [a plaintiff's] burden of demonstrating [the employer's] legitimate reason for firing [the plaintiff] was pretextual," but, rather, they "merely aid [the plaintiff] in meeting his initial burden to make a *prima facie* case for retaliatory discharge"). Moreover, although Mr. Eades' termination came on the heels of his letter to Mr. Richard outlining his complaints about Ms. Fein's behavior, that letter simply reiterated complaints he had made previously, undermining Mr. Eades' argument that the proximity between his complaint and his termination should be determinative of the pretext issue.

In addition to temporal proximity, Mr. Eades asserts that pretext is evidenced by the defendant's "changing rationale" for its decision to terminate him. (Docket No. 21 at 13.) Specifically, he relies on the defendant's response to the charge of discrimination that he filed with the Equal Employment Opportunity Commission, in which the defendant specified that Mr. Eades was terminated because of "his lack of any performance in any position," "the failure of [Mr. Eades] to meet the most basic element of his job," and "the complete inability of [Mr.

13

Eades] to perform the work." (Docket No. 34 Ex. 2 at Ex. 2.) Mr. Eades argues that the defendant's response is further notable because nowhere does it reference Mr. Eades' severance agreement with his previous employer as bearing on its decision to terminate Mr. Eades. (*See id.*)

It is true, as Mr. Eades argues, that "[a]n employer's changing rationale for making an adverse employment decision *can* be evidence of pretext." *Thurman v. Yellow Freight Sys.*, 90 F.3d 1160, 1167 (6th Cir. 1996) (emphasis added ). However, in this case, given what is otherwise a complete lack of evidence of pretext and that the various reasons asserted by the defendant are amply supported by the evidence, the fact that the defendant's explanations have become more nuanced and detailed over the course of litigation does not establish evidence of pretext. An employer may, indeed, have multiple legitimate reasons for terminating an employee. *See Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998) (holding that performance could be an "additional, but undisclosed reason" for employer's decision to terminate and that "the existence of a possible additional non-discriminatory basis" for an employee's termination does not establish pretext); *Bhupendra Parikh v. Cleveland Hardware & Forging Co.*, No. 1:04-cv-2363, 2006 U.S. Dist. LEXIS 34912, at *24-25 (N.D. Ohio May 26, 2006) (noting that, where an employer asserts multiple legitimate non-discriminatory reasons for its actions, a plaintiff must demonstrate that each reason is pretextual, and holding that plaintiff had not established that multiple legitimate reasons asserted by defendant were pretextual); *Stone v. Galaxy Carpet Mills, Inc.*, 841 F. Supp. 1181, 1187 (N.D. Ga. 1993) (holding that singular reason advanced by employer at time of termination was "not inconsistent with [the employer's] more developed reasons articulated on motion for summary judgment" and that the multiple reasons advanced by the employer did not establish pretext). The fact is that Mr. Eades did have

14

performance-related issues as well as a personality conflict with Ms. Fein, and he also does not dispute his misconduct with respect to the severance package he received from his former employer.  These legitimate reasons are neither inconsistent nor mutually exclusive, and Mr. Eades has provided no evidence that they were pretextual.[6]

There is no evidence that the legitimate, non-discriminatory reasons asserted by the defendant as the basis for Mr. Eades' termination, taken either individually or collectively, had no basis in fact, did not motivate the defendant's conduct, or were insufficient to motivate the defendant's conduct.  Therefore, Mr. Eades has not established pretext and the defendant's motion for summary judgment on his retaliation claims will be granted.

## CONCLUSION

For the reasons discussed herein, the Motion for Summary Judgment of Defendant Brookdale Senior Living, Inc. will be granted and the plaintiff's claims dismissed.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[6] Moreover, Mr. Eades' termination was hardly a *fait accompli* at the time of his meeting with Mr. Richard and Mr. Frisby.  In fact, Mr. Richard essentially provided Mr. Eades with a choice, to the extent that he suggested that other positions at Brookdale might be available to Mr. Eades or that Mr. Eades might be offered a severance package.  Mr. Eades does not argue that he agreed that he could no longer work with Ms. Fein and that he was interested instead in a severance package.  The fact is that, when Brookdale subsequently offered Mr. Eades a three-month severance package, which it was certainly within its rights to do, it was Mr. Eades himself who chose to decline that severance package.  Indeed, it seems a legitimate question as to whether there even was an adverse employment action in this case, given the fact that Mr. Eades appears to have signaled that he preferred a severance package over continued employment and then declined a severance package when it was offered.  However, as the defendant has conceded that the plaintiff has established a *prima facie* case, that issue is not before the court.